[No. 16339. Department One. July 28, 1921.]

*In the Matter of the* PESHASTIN IRRIGATION DISTRICT.
BOARD OF DIRECTORS, PESHASTIN IRRIGATION DISTRICT,
*Respondent,* v. S. P. BEECHER *et al., Appellants.*[1]

WATERS (89)—IRRIGATION DISTRICTS—PROCEEDINGS TO ESTABLISH—
PUBLICATION OF NOTICES—SUFFICIENCY. The notices for the hearing
of a petition and for an election for the organization of an irrigation
district may properly be published in a newspaper of general circu-
lation in the vicinity of the proposed district instead of in the desig-
nated official newspaper of the county, in view of Rem. Code, § 6417,
providing that it may be made in any newspaper of general circula-
tion in the county, selected by the person or body charged with mak-
ing the publication, which shall be the official newspaper for such
purpose.

SAME (89)—NOTICE—DESCRIPTION OF BOUNDARIES. A notice of
election for the creation of an irrigation district sufficiently de-
scribes courses and distances in establishing the district boundaries
by a designation of one point as "the most northerly point of lot 3,
Peshastin Orchard," and another point as "the northwest corner of
lot 6, Springdale Orchards," where the plats of such tracts were of
record in the county auditor's office, and the boundary of the district
was described in the notice as commencing at a specified point with
reference to a section corner of a specified township and range in
the county.

SAME (89)—PETITION—ORDER ESTABLISHING DISTRICT—FILING OR-
DER. Under Rem. Code, § 6490, as amended by Laws 1917, ch. 162,
p. 723, a petition for the confirmation by the superior court of pro-
ceedings organizing an irrigation district is only required to "state
generally that the irrigation district was duly organized," and need
not recite that a certified copy of the order of the county commis-
sioners finally establishing the district was filed with the county
clerk pursuant to Id., § 6418, as amended by Laws 1917, ch. 162.

SAME (91)—BONDS—SUBMISSION TO VOTERS. Where the only
questions submitted to the voters of an irrigation district under a
notice calling an election to authorize a bond issue were the obtain-
ing of additional water for irrigation and for the construction, re-
construction, betterment, extension and acquisition of the necessary
rights and property therefor, it was immaterial that a prior resolu-
tion of the board had also contemplated the submission of the ques-
tion of raising funds for operating purposes.

[1]Reported in 200 Pac. 88.

SAME    (89) — PROCEEDINGS — CONFIRMATION — PETITION — SUFFI-
CIENCY. Where a petition for the confirmation of the organization
of an irrigation district fails to recite the publication of a notice for
a bond election, if conceded as necessary under Rem. Code, § 6490,
as amended by Laws 1917, ch. 162, the petition will be deemed
amended to correspond to the proof, where the fact of proper publi-
cation appears in the evidence.

SAME (89)—CONFIRMATION—ILLEGAL USE OF FUNDS. In a pro-
ceeding to confirm the organization of an irrigation district and its
proposed bond issue, any threatened illegal disposition of the pro-
ceeds of the bond issue is not a proper matter for consideration,
that being a matter for adjudication on the equity side of the court.

Appeal from a judgment of the superior court for
Chelan county, Allen, J., entered April 16, 1920, upon
findings in favor of the plaintiff, confirming proceed-
ings for the organization of an irrigation district, and
for the issuance of bonds, tried to the court. Affirmed.

*Ludington & Shiner* and *Herman Howe,* for appel-
lants.

*Corbin & Easton* and *Walter H. Hodge,* for respond-
ent.

PARKER, C. J.—This is a special proceeding com-
menced in the superior court for Chelan county by the
board of directors of the Peshastin Irrigation District,
in that county, under §§ 6489-6493, Rem. Code, as
amended by chapter 162, Laws of 1917, p. 723, seeking
a decree confirming the proceedings for the organiza-
tion of the district and the proceedings for the issuance
of bonds of the district in pursuance of an election held
for that purpose. S. P. Beecher and wife, owners of
land within the district, filed their answer resisting
confirmation of the proceeding as petitioned for by the
board of directors of the district. Thus, as provided by
§ 6492, Rem. Code, there arose this controversy, in
which the board of directors became the plaintiff and
Beecher and wife the defendants. A trial upon the

merits in the superior court, as between these parties, resulted in findings and a decree confirming the organization of the district and the proceedings therefor, and also confirming the proceedings for the issuance of the bonds of the district. From this disposition of the cause in the superior court, the defendants Beecher and wife have appealed to this court.

By the provisions of § 6417, Rem. Code, it is required, in the proceedings for the organization of an irrigation district, that two notices be published; a notice of the hearing before the county commissioners upon the petition of the owners of land within the proposed district, at which hearing the boundaries of the proposed district are finally determined and an election ordered by the county commissioners upon the question of whether or not the district shall be organized; and a notice of the election so ordered. These required notices were published in the Cashmere Valley Record, a weekly newspaper published at Cashmere, very near the proposed district and of general circulation in that neighborhood, and were not published in the newspaper which had been designated generally by the county commissioners as the official newspaper of the county; that newspaper being published at Wenatchee, several miles distant from the district. The publication of these notices in a newspaper other than the general official county newspaper, it is contended in appellants' behalf, constitutes a fatal defect in the proceedings, rendering the organization of the district void. We cannot agree with this contention. The concluding language of § 6417, Rem. Code, which section requires the publication of such notices, reads:

" . . . where in this act publication is required to be made in a newspaper of any county, the same may be made in any newspaper of general circu-

lation in any such county, selected by the person or body charged with making the publication and such newspaper shall be the official paper for such purpose.''

We do not find in the record before us any specific order or direction made by the county commissioners that these notices were to be published in any specified newspaper. We think we may assume, therefore, that, since they are to be given by the county auditor, they were published in the Cashmere Valley Record by direction of that officer; and we note that recitals in the subsequent proceedings by the county commissioners plainly indicate that such publication was approved by that body; indeed, there is a strong inference that that body directed these notices to be published in the Cashmere Valley Record, though, as we have noticed, there seems to have been no specific order made of record to that effect. We are of the opinion that, in view of the concluding language of § 6417, Rem. Code, above quoted, the notices were lawfully published in the Cashmere Valley Record. It is not claimed that the notices were not fairly given, or failed to furnish ample opportunity for all interested persons to be heard before the county commissioners and vote at the election. Indeed, the location of the publication of the Cashmere Valley Record in the immediate neighborhood of the district strongly suggests that that paper was a more appropriate paper for the publication of these notices than the general official paper of the county would have been.

It is further contended in behalf of appellants that the description of the boundaries of the district in the petition of the landowners, the notice of election and the order of the county commissioners finally establishing its boundaries, is fatally defective. The boundary description of the district found in these documents

commences at a specified point with reference to a section corner of a specified township and range in that county, and proceeds therefrom by courses and distances to designated points and finally to the place of beginning. One of these points is designated as "the most northerly point of lot 3, Peshastin Orchard, Chelan county, Washington," and another as "the northwest corner of lot 6, Springdale Orchards, Chelan county, Washington." An engineer and surveyor of long experience in surveying and tracing boundaries in Chelan county, testified in substance that the boundary description of the district as set forth in the petition and order could be traced and located upon the ground, providing "that the points given as corners of lots of orchards are a matter of record." The county auditor testified without objection that there were upon record in his office official plats designated as "Peshastin Orchards" and "Springdale Orchards," but that he was unable to say, not having the records before him at the trial, in what section, township or range such orchard plats were located. The argument of counsel for appellants is directed only to the supposed uncertainty of location upon the ground of these two designated points in Peshastin and Springdale orchards, and is in substance that these points are rendered uncertain because of the fact that the county auditor was unable to say in what township or range they are located, but manifestly the other language of the description of the boundary of the district renders it sufficiently fixed and certain upon the ground to put them in a section, township and range that will make them fit the balance of the boundary description. We are quite convinced that the evidence at least makes a sufficient *prima facie* showing to warrant the conclusion that these questioned points are capable of being located upon the

ground with sufficient certainty to satisfy the statute as to description of the boundary of the district. Our decision in *In re Wenatchee Reclamation District,* 91 Wash. 60, 157 Pac. 38, lends support to this conclusion.

It is further contended in behalf of appellants that the initial petition filed in the superior court in this proceeding by the directors of the district fails to show that a certified copy of the order of the county commissioners finally establishing the district was filed with the county clerk of Chelan county as required by § 6418, Rem. Code, as amended by ch. 162, Laws of 1917. The answer to this contention is found in the fact that § 6490, Rem. Code, as amended by ch. 162, Laws of 1917, p. 723, specifying what shall be alleged in the petition, does not require any such allegation, but only that the petition "shall state generally that the irrigation district was duly organized." It is plain from the record before us that a certified copy of the order of the county commissioners, finally establishing the district, was timely filed with the county clerk; though that fact does not appear in the petition.

It is further contended in appellants' behalf that the proceedings for the bond election are fatally defective in that there was submitted to the voters of the district the question of expending funds to be raised by the issuance of bonds, for the purpose of operating the irrigation system of the district; as well as the question of expending the funds to be raised by the issuance of the bonds for construction, betterment and extension of the irrigation system of the district. We may assume for present purposes that the statute (Rem. Code, § 6490, as amended by ch. 162, Laws of 1917, p. 723), does not authorize the raising of funds by the issuance of bonds of the district, to be expended in the operation of its irrigation system. In the resolution of the

board of directors of the district providing for the holding of this bond election, it is true we find recited, among other things, that

"Whereas there are no funds of said Peshastin Irrigation District with which to so purchase, acquire, construct, reconstruct, better and extend and operate said irrigation system    .   .   .; and

"Whereas the board of directors of the said Peshastin Irrigation District has caused to be made a careful estimate to determine the amount of funds necessary to be raised for the above purposes, and that such estimate is the sum of One Hundred Thousand Dollars ($100,000),   .   .   .

"Be it further resolved that the said board of directors of said district do hereby call a special election for the purpose of voting on the question as to whether or not bonds of said Peshastin Irrigation District shall be issued in the amount above specified;   .   .   ."

In the notice of election, however, following the adoption of this resolution, which notice of election was signed by all of the directors of the district, it is stated that the election is to be held

"   .   .   .   for the purpose of determining whether or not the bonds of said Peshastin Irrigation District in the amount of One Hundred Thousand Dollars ($100,000) shall be issued for the purpose of obtaining additional water with which to irrigate the lands in said district and for the construction, re-construction, betterment, extension and acquisition of the necessary property and rights therefor,   .   .   ."

There is no mention whatever made in the notice of election that the proposition submitted to the voters included the raising or expenditure of funds for the operation of the district's irrigation system; so that when we critically examine the record of the proceedings of the board of directors, it appears that the question of raising or expending money for the operation of the

irrigation system of the district was not submitted to
the electors of the district; and that the board of direc-
tors abandoned all purpose of issuing the bonds to
raise any funds for such purpose.  Indeed, the notice
of election, signed by all of the directors, seems to us
to plainly evidence a rescission of any such purpose as
may have been evidenced by its former resolution.  A
critical reading of the findings, conclusions and de-
cree of the trial court we think renders it plain that the
proceedings looking to the bond election and the issu-
ance of the bonds were confirmed by the trial court
upon the theory and assumption that there was no ulti-
mate intention or purpose on the part of the directors
of the district to submit to the voters of the district the
question of so raising funds for the operation of its
irrigation system, or to use any of the funds which
might be so raised for any such purpose.

It is further contended in appellants' behalf that the
petition filed by the board of directors of the district
in this proceeding, asking confirmation of their pro-
ceedings, was defective in that it failed to affirmatively
specifically allege the publication of a notice of the
bond election.  In view of the provisions of § 6490, Rem.
Code, as amended by ch. 162, Laws of 1917, p. 723, we
think that it was not necessary to specifically plead
such fact in the petition.  In any event, the proof shows
a proper publication of such notice, and we must pre-
sume the petition to have been amended to fit such
proof, in so far as such an amendment was necessary.

It is finally contended in appellants' behalf that the
issuance of the bonds as proposed would be for a pur-
pose which, because of legal obstacles, could not be
carried out by the directors of the district.  Whatever
might be said of this contention were this a suit in
equity seeking to restrain the commissioners from ex-

pending funds to be raised from this bond issue, in some threatened manner, we think it has no place in this case. Much argument is indulged in by counsel for appellants, based upon evidence in the case, which was admitted over the objection of counsel for the board of directors, rested upon the theory that there is disclosed by the evidence a threat on the part of the board of directors to expend the proceeds of this bond issue for purposes that would be illegal. We think we are not concerned here, however, with the question of any threat of the board of directors to make such illegal expenditures of the funds to be raised by the bond issue. What we are here concerned with is, were the proceedings leading up to the confirmation of the district and this bond election regular and valid? The matters to be decided by the court in this special proceeding are set forth in § 6493, Rem. Code, as amended by ch. 162, Laws of 1917, p. 723, as follows:

"Upon the hearing of such special proceedings, the court shall have full power and jurisdiction to examine and determine the legality and validity of and approve and confirm each and all of the proceedings for the organization of said district under the provisions of this chapter, from and including the petition for the organization of the district, and all other proceedings which may affect the legality of the formation of said district or the legality or validity of said bonds, and the order for the sale, and the sale thereof, and all proceedings which may affect the authorization or validity of contract with the United States."

Our attention is not directed to any provision of the, statute—and we think there is none—requiring the board of directors of the district to submit for approval or disapproval to the electors of the district the plan of construction, betterment and extension of the irrigation system, for which the money to be raised by bond issue shall be expended; except such expenditure

involve the entering into a contract with the United States, a matter with which we are not here concerned. We think the court rightfully refrained from deciding any question touching a supposed threat of the directors of the district to unlawfully use the funds which might be raised from the issuance of the bonds. The courts, on their equity side, are still open for the adjudication of any such question.

We are of the opinion that the decree of the superior court must be affirmed. It is so ordered.

HOLCOMB, FULLERTON, MACKINTOSH, and BRIDGES, JJ., concur.